UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF ILLINOIS
ROCK ISLAND DIVISION

| | |
|---|---|
| UNITED STATES OF AMERICA, | ) |
| Plaintiff, | ) ) ) |
| v. | ) Case No. 03-40021 |
| RICHARD A. MITCHELL, | ) ) ) |
| Defendant. | ) |

## ORDER AND OPINION

This matter is now before the Court on Defendant's Amended Motion for Compassionate Release requesting a reduction in his term of imprisonment pursuant to 18 U.S.C. § 3582(c)(1)(A). ECF No. 111. For the reasons stated below, his Motion is DENIED.

### BACKGROUND

On February 20, 2003, a federal grand jury indicted Defendant with conspiracy to knowingly and intentionally manufacture, distribute, and possess with the intent to distribute, fifty grams or more of methamphetamine and 500 grams or more of a mixture and substance containing a detectable amount of methamphetamine in violation of 21 U.S.C. §§ 841(a) and (b)(1)(A). ECF No. 8. Count 2 of the indictment charged Defendant individually for knowingly and intentionally attempting to manufacture methamphetamine in violation of 21 U.S.C. § 841(b)(1)(C). *Id*.

On April 24, 2003, the Government filed a notice pursuant to 21 U.S.C. § 851 to rely upon Defendant's prior felony drug convictions to enhance his sentence. ECF No. 20. Defendant had previously been convicted of unlawful delivery of a controlled substance, indecency with a child, assault of a family member, and unlawful possession with intent to manufacture a controlled substance. PSR ¶¶ 53-57.

On April 25, 2003, Defendant pled guilty to both counts of the indictment pursuant to a written plea agreement. PSR ¶ 4; ECF No. 113-1. On May 14, 2004, this Court sentenced him to life on Count 1 and 360 months on Count 2, to run concurrently. ECF Nos. 37, 44. If released, Defendant would be placed on supervised release for ten years on Count 1 and six years on Count 2, to run concurrently. *Id*. Defendant is currently incarcerated at FCI Pekin in Pekin, Illinois and does not have an anticipated release date. ECF No. 112 at 1.

On November 30, 2020, Defendant filed a *pro se* motion for compassionate release. ECF No. 106. The Court appointed the Federal Public Defender (FPD) to represent him. On December 15, 2020, the FPD filed an Amended Motion for Compassionate Release on Defendant's behalf, arguing that Defendant's medical conditions and allegedly disparate life sentence warrant compassionate release. ECF No. 111. On December 28, 2020, the U.S. Probation Office filed a memorandum stating that Defendant's proposed release plan was unsuitable. ECF No. 112. On December 29, 2020, the Government filed a response to Defendant's Amended Motion. ECF No. 113. On December 30, 2020, Defendant filed a motion for leave to file reply. ECF No. 114. On January 4, 2021, the Court granted his motion and filed the reply. ECF No. 115.

On January 15, 2021, this Court entered a Text Order directing the Government to specifically respond to the arguments Defendant raised in his Amended Motion regarding the length of his sentence. On January 21, 2021, the Government filed its sur-reply. ECF No. 116. On January 22, 2021, Defendant filed a motion for leave to file a sur-sur-reply. ECF No. 117. The Court granted Defendant's motion and filed his sur-sur-reply on January 22, 2021. ECF No. 118. This Order follows.

## LEGAL STANDARD

Before filing a motion for compassionate release, a defendant is required to first request that the Bureau of Prisons (BOP) file a motion on his behalf. 18 U.S.C. § 3582(c)(1)(A). A court may grant a motion only if it was filed "after the defendant has fully exhausted all administrative rights to appeal a failure of the Bureau of Prisons to bring a motion on the defendant's behalf" or after thirty days have passed "from the receipt of such a request by the warden of the defendant's facility, whichever is earlier." *Id.*

The compassionate release statute directs the Court to make three considerations: (1) whether extraordinary and compelling reasons warrant a sentence reduction; (2) whether a reduction is consistent with the factors listed in 18 U.S.C. § 3553(a); and (3) whether a reduction would be "consistent with applicable policy statements issued by the Sentencing Commission." § 3582(c)(1). The Sentencing Commission, however, has not updated its policy statements since the First Step Act came into effect. Prior to the passage of the First Step Act, federal judges were only able to release prisoners for compassionate release reasons upon motion by the BOP. *United States v. Gunn*, 980 F.3d 1178, 1179 (7th Cir. 2020). The First Step Act gave judges the power to grant compassionate release on a prisoner's own motion provided that the prisoner first allowed the BOP to review the request and make a recommendation or thirty days had passed since the prisoner submitted his or her request to the BOP. *Id.* The Seventh Circuit determined that the most recent policy statements from the Sentencing Commission do not apply to prisoner-initiated motions because the guidelines only address those motions that were brought pursuant to a BOP motion. *Id.* at 1180. Accordingly, the Seventh Circuit held that "because the Guidelines Manual lacks an applicable policy statement, the trailing paragraph of § 3582(c)(1)(A) does not curtail a district judge's discretion. Any decision is 'consistent with' a nonexistent policy statement." *Id.* This Court

is therefore not bound by the Sentencing Commission's analysis in § 1B1.13 or the application notes regarding the definition of "extraordinary and compelling reasons." *Id*. at 1181.

Despite the Seventh Circuit clarifying that courts are not bound by the Sentencing Commission's guidelines regarding compassionate release when an inmate brings the motion, the Seventh Circuit strongly suggested that those guidelines are still relevant to district courts' decisions. *Id*. at 1180. The Seventh Circuit explained that the guidelines provide a "working definition" of "extraordinary and compelling reasons" and cautioned that a judge who "strikes off on a different path risks an appellate holding that judicial discretion has been abused." *Id*. "In this way the Commission's analysis can guide discretion without being conclusive." *Id*. The Seventh Circuit further stated that it would "expect" district judges to give the BOP Director's analysis regarding the prisoner's request "substantial weight, even though under the First Step Act the Director's views are not controlling." *Id*. Based on the available guidance from the Seventh Circuit, this Court will give great weight to the Sentencing Guidelines regarding motions for compassionate release even though they are not binding in this case.

If an inmate has a chronic medical condition that has been identified by the Centers for Disease Control and Prevention (CDC) as elevating the inmate's risk of becoming seriously ill from COVID-19, that condition may satisfy the standard of "extraordinary and compelling reasons." USSG § 1B1.13, cmt. n.1(A)(ii)(I). A chronic condition (i.e., one "from which [the defendant] is not expected to recover" reasonably may be found to be "serious" and to "substantially diminish[] the ability of the defendant to provide self-care within the environment of a correctional facility," even if that condition would not have constituted an "extraordinary and compelling reason" absent the risk of COVID-19. *Id*.

"The mere presence of COVID-19 in a particular prison cannot justify compassionate release—if it could, every inmate in that prison could obtain release." *United States v. Melgarejo*, No. 12-CR-20050, 2020 WL 2395982, at *5 (C.D. Ill. May 12, 2020). Rather, "a prisoner [may] satisfy the extraordinary and compelling reasons requirement by showing that his particular institution is facing a serious outbreak of COVID-19 infections, the institution is unable to successfully contain the outbreak, and his health condition places him at significant risk of complications should he contract the virus." *Id*. at 5–6.

Finally, this Court is disinclined to grant a sentence reduction unless it determines that a defendant "is not a danger to the safety of any other person or to the community." *See* USSG § 1B1.13(2).

## DISCUSSION

### I. Exhaustion of Administrative Remedies

On September 24, 2020, Defendant submitted a request for compassionate release to the Warden at FCI Pekin. ECF No. 111 at 10. On October 13, 2020, the Warden denied his request. *Id*. Therefore, Defendant exhausted his administrative remedies before filing a motion for compassionate release. *See* 18 U.S.C. § 3582(c)(1)(A).

### II. Eligibility for Compassionate Release

Due to the COVID-19 outbreak at FCI Pekin and his medical conditions, Defendant asks the Court to grant compassionate release and allow him to serve the remainder of his sentence on home confinement. ECF No. 111 at 9. Alternatively, he argues the Court should reduce his sentence to 262 months on Counts 1 and 2 to run concurrently, which represents the revised upper end of his guideline range. *Id*. at 9-10. The Government opposes compassionate release because

Defendant's release plan is unsuitable, and a sentence reduction is unwarranted under 18 U.S.C. § 3553(a). ECF No. 113 at 1.

### A. FCI Pekin

As of February 8, 2021, eight staff members and four inmates at FCI Pekin are positive for COVID-19; seventy staff members and 791 inmates who contracted the virus have recovered; and there have been no deaths. *COVID-19 Coronavirus*, FEDERAL BUREAU OF PRISONS, https://www.bop.gov/coronavirus/ (last visited Feb. 8, 2021). At the time he filed his Amended Motion, FCI Pekin was third in the nation for active COVID-19 infections within the BOP. ECF No. 111 at 8.

### B. Defendant's Medical Conditions

Defendant is sixty-four years old, morbidly obese, and uses an albuterol inhaler to control his asthma. ECF No. at 2, 4, 14. Defendant self-reports being 5 feet 10 inches tall and weighing 280 pounds, which results in a body mass index of 40.2. *Id*. at 3. The CDC recognizes an increased risk of severe illness from the virus among obese adults. *See People with Certain Medical Conditions*, CENTERS FOR DISEASE CONTROL AND PREVENTION, https://www.cdc.gov/coronavirus/2019-ncov/need-extra-precautions/people-with-medical-conditions.html (last visited Feb.8, 2021). Additionally, the CDC found that moderate to severe asthma might increase the likelihood of serious illness. *Id*. Defendant argues that the COVID-19 pandemic and his serious medical conditions constitute extraordinary and compelling reasons for compassionate release. ECF No. 111 at 14.

The Government agrees that if an inmate has a chronic medical condition that has been identified by the CDC as elevating the inmate's risk of becoming seriously ill from COVID-19, that condition may satisfy the standard of extraordinary and compelling reasons for compassionate

release. ECF No. 113 at 5-6. The Government concedes that Defendant's obesity increases his risk for severe illness from COVID-19 and allows him to be considered for release. *Id*. at 6.

The Court finds that Defendant has established extraordinary and compelling reasons for compassionate release based on his medical conditions. The inquiry does not end here, however; the Court may also consider whether a sentence reduction is warranted under the factors listed in 18 U.S.C. § 3553(a). *See* 18 U.S.C. § 3582(c)(1)(A).

### III. Defendant's Life Sentence

Defendant has been in custody for about 214 months for this offense. ECF No. 111 at 2. He claims that he was sentenced "far more harshly than a similarly situated defendant" because, if sentenced today, he would be subject to a statutory mandatory minimum of ten years on Count 1 and 240 months on Count 2. *Id*. at 5, 28. He argues that extraordinary and compelling reasons for compassionate release exist based on his disparate life sentence and that the Court should consider the changes to his statutory mandatory minimum sentence as part of its § 3553(a) analysis. *Id*. at 22. Defendant cites to several district court decisions finding that changes in statutory sentencing schemes, rehabilitation, and other factors should be considered as part of a court's analysis under § 3582(c)(1)(A)(i). *Id*. These cases are not binding authority on this Court. *See Van Straaten v. Shell Oil Products Co. LLC*, 678 F.3d 486, 490 (7th Cir. 2012) (district court decisions are not binding, even on other district judges within the same district).

According to the Government, the fact that a similarly situated defendant might receive a different sentence today does not mean that Defendant's sentence in this case was disparate, harsh, or draconian. ECF No. 113 at 10. At the time of sentencing, Defendant was subject to a mandatory minimum term of life in prison due to the amount of controlled substances involved in the offense and his two prior felony convictions. *Id*.; *See* 113-1 at 3. Because the Government agreed that

Defendant met the extraordinary and compelling standard for compassionate release based on his obesity, the Government did not directly address his arguments regarding his life sentence. ECF No. 113 at 6. As a result, this Court ordered the Government to file a supplemental brief to respond specifically to Defendant's arguments related to his sentence.

In its sur-reply, the Government states that Defendant's "request is tantamount to a request for a judicial 'do-over' and is, accordingly, antithetical to the purpose of compassionate release." ECF No. 116 at 1. The Government also asserts that holding otherwise would contradict this Court's prior holding in *United States v. Welker*, No. 13-CR-10061, 2020 WL 7091540 (C.D. Ill. Dec. 4, 2020). In *Welker*, the defendant moved for compassionate release based in part on "his unusually long sentence and a subsequent change to the law that would subject him to a lower mandatory minimum sentence" if he were sentenced today. *Id*. at *3. In response, the government argued that the defendant was trying to use the compassionate release statute as "a workaround" to bypass well-established methods of challenging a sentence, and thereby convert compassionate release "into a largely open-ended vehicle through which to modify long sentences, all in contravention of Congressional limits." ECF No. 116 at 8. This Court agreed with the government and "acknowledge[d] that other district courts [were] split on the issue of whether changes in the law that would result in a substantially lower sentencing guideline range or a substantially lower mandatory minimum [constituted] extraordinary and compelling justification for compassionate release," but ultimately determined that, "because the previous compassionate [release] guidelines focus on individualized health and family circumstances," compassionate release was inappropriate. *Welker*, 2020 WL 7091540 at *4.

In his sur-sur-reply, Defendant argues that the plain language of 18 U.S.C. § 3582(c)(1)(A) does not prohibit this Court from addressing the sentencing changes as extraordinary and

8

compelling reasons for compassionate release because Congress did not define "extraordinary and compelling" in § 3582. ECF No. 118 at 2, 9. Defendant argues that his disparate sentence is the "very definition of extraordinary" because he would not be given a life sentence for the same crime if he was sentenced today. *Id*. at 10. He urges the Court to reconsider its decision in *Welker*, especially in light of *United States v. McCoy*, 981 F.3d 271, 286 (4th Cir. 2020), which noted that the individualized nature of the compassionate release analysis allows the Court to determine that these changes are extraordinary and compelling for certain defendants.

This Court rejects Defendant's assertion that it should reconsider its prior holding in *Welker* based on the Fourth Circuit's decision in *McCoy*. This Court is not bound by a decision of a court of appeals from another circuit. Case law from the Seventh Circuit – which this Court is bound by – indicates that an alleged sentencing disparity is not the type of "compelling and extraordinary" circumstance contemplated by the First Step Act. *United States v. Arojojoye*, 806 F. App'x 475, 477 (7th Cir. 2020). In *Arojojoye*, the defendant moved to modify his term of imprisonment under the compassionate release provision of the First Step Act. The defendant argued that his sentence violated the policy of avoiding "unwarranted sentence disparities among defendants with similar records who have been found guilty of similar conduct." *Id*. at 477 (citing 18 U.S.C. § 3553(a)(6)). The disparity between his sentence and his co-defendant's, he argued, was an extraordinary and compelling reason to reduce his sentence. The government disagreed, arguing that the compassionate release provision is not a vehicle for raising "a legal sentencing argument." *Id*. The court recognized that while the defendant was nominally requesting relief under § 3582(c)(1)(A)(i), he was really attacking the length of his sentence, which should be raised in a § 2255 proceeding. Therefore, this Court declines to revisit its holding in *Welker* and finds that the

9

length of Defendant's sentence does not constitute extraordinary and compelling reasons for compassionate release under § 3582(c)(1)(A).

Defendant also argues that the Court should find that his alleged sentencing disparity can be considered under 18 U.S.C. § 3553(a)(6); however, the statutorily required minimum sentence of life in prison applied to Defendant's conduct under the law at the time of sentencing. The Defendant's sentence was not unjust, illegal, or disparate because any other similarly situated defendant would have faced the same penalty. While Defendant would not receive a life sentence if he was sentenced today, this argument cannot be shoehorned into a motion for compassionate release. As this Court previously stated in *Welker*: "The Court is not persuaded that this factor [i.e., a non-retroactive change to the law] should be a strong consideration in granting a motion for compassionate release because the determination of the retroactivity of a statutory provision is made by Congress." *Welker*, 2020 WL 7091540, at *3 (citing *Dorsey v. United States*, 567 U.S. 260, 274 (2012)). Furthermore, this Court is "not inclined to reduce a sentence based upon the fact that Congress has now lowered the penalty for the crime without clear language indicating that it is appropriate for the Court to do so." *Welker*, 2020 WL 7091540, at *3.

### IV.   Other Applicable § 3553(a) Factors

The Court may also consider whether a reduction is consistent with the other factors listed in 18 U.S.C. § 3553(a). The facts of this case were extremely serious. Defendant participated in a methamphetamine drug ring, which manufactured and distributed methamphetamine throughout Illinois. PSR ¶ 12. He was a cook for the conspiracy and manufactured methamphetamine in exchange for drugs and money. *Id*. at ¶¶ 15-20. To make the methamphetamine, he used the "Nazi method," which requires the acquisition and use of highly volatile chemicals that can cause the release of toxic gases and chemicals, fires, and explosions. *Id*. at ¶¶ 13, 35. After several members

of the conspiracy were arrested, Defendant sought to restart the conspiracy to begin producing methamphetamine again. *Id*. at ¶ 33. During his involvement in the conspiracy, Defendant manufactured more than 3.36 kilograms of methamphetamine. *Id*. at ¶ 34.

Defendant's criminal history, which includes indecency with a child and assault of a family member, is very troubling. *Id*. at ¶¶ 53-57. His disciplinary issues in prison also raise serious concerns about his risk of recidivism. Records reveal sanctions over the past two years for refusing to work and for possessing drugs and alcohol. ECF No. 113-2. The BOP classifies Defendant as posing a medium risk to recidivate. ECF No. 113-3. Nothing in his personal history suggests that he would be deterred from committing another criminal offense. Moreover, he lacks a suitable release plan. ECF No. 112. He planned to reside with his fiancée in Texas or with a friend in Michigan, but when the U.S. Probation Office contacted them, they were not willing to allow Defendant to reside with them. *Id*. at 1-2. Upon consideration of the applicable § 3553(a) factors, the Court finds that a reduced sentence is unwarranted.

## CONCLUSION

For the reasons stated above, Defendant's Amended Motion for Compassionate Release [111] is DENIED and his *pro se* Motion for Compassionate Release [106] is MOOT.

ENTERED this 9th day of February, 2021.

s/ Michael M. Mihm
Michael M. Mihm
United States District Judge
